1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10           **WESTERN DIVISION**

11   **EDWIN THOMAS SNELL,**          )
                                       )
12              **Plaintiffs,**        )        **No. CV 12-6118 GAF (AJW)**
                                       )
13          **v.**                     )        **MEMORANDUM AND ORDER**
                                       )        **DISMISSING COMPLAINT**
14   **EDMUND G. BROWN, et al.,**      )        **WITH LEAVE TO AMEND**
                                       )
15              **Defendants.**        )
     _____   )

16

17                          **Proceedings**

18           Plaintiff paid the filing fee and filed a complaint pro se under 42 U.S.C. section 1983 against the

19   following defendants:  Edmund G. Brown, Governor of California; Kamala D. Harris, Attorney General of

20   the State of California; Steve Cooley, Los Angeles County District Attorney; the Director of the California

21   Department of Corrections and Rehabilitation ("CDCR"); C.P. Andicochen, a parole supervisor; and J.

22   McKeller, a parole officer. Defendants are sued in their official capacity for injunctive relief.

23           Because the complaint fails to state a federal claim on which relief can be granted, it is dismissed

24   with leave to amend. Plaintiff has three options:

25   (1)     Plaintiff **may continue this action in this court** by filing a document labeled **"First Amended**

26           **Complaint"** within **twenty-one (21) days** of the date of this order. To withstand dismissal, the

27           amended complaint must attempt to correct the factual and legal defects described  below.

28   (2)      Plaintiff **may file a "Notice of Intent Not to Amend Complaint"** within **twenty-one (21) days**

1   of the date of this order.  The timely filing of a notice of intent not to amend will be construed as an

2   indication that plaintiff wishes to challenge dismissal of the complaint by seeking review of this

3   order in the Ninth Circuit Court of Appeals.  If the court receives timely written notice of plaintiff's

4   intent not to file an amended complaint, this action will be dismissed with prejudice, and plaintiff

5   will be free to appeal the order of dismissal.  <u>See</u> <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1063-

6   1066 (9th Cir. 2004); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995).

7   (3)   Plaintiff **may do nothing in response to this order**.  If plaintiff does not respond to this order by

8   filing either a timely amended complaint or a timely notice of intent not to amend, plaintiff will be

9   deemed to have consented to the dismissal of this action with prejudice under Rule 41(b) of the

10  Federal Rules of Civil Procedure for failure to prosecute and failure to comply with this order.  <u>See</u>

11  <u>Edwards</u>, 356 F.3d at 1063-1066.

12  **Plaintiff's Allegations**

13  The complaint and attached exhibits allege as follows. Plaintiff was "falsely arrested in October 2010

14  for political reasons." [Complaint 9-10].  Plaintiff was a community activist who was "leading the attack

15  against the City of Bell, seeking election recalls." [Complaint 6].  The City of Bell obtained a restraining

16  order using "false charges" against plaintiff to silence him and "take the momentum" out of the recall

17  movement.  In addition, plaintiff was charged with making a criminal threat against the clerk of the City of

18  Bell when requesting election recall documents. On July 6, 2011, defendants "forced" plaintiff, aged 64,

19  to accept a plea deal "to  save himself from a process that operates under an unlawful policy that misuses

20  the 3-strikes law . . . " [Complaint 6].  Defendants alleged that plaintiff had two prior strikes "they could

21  never prove" in order to increase the amount of the bond that plaintiff was required to post to make bail.

22  [Complaint 6].

23  During the preliminary hearing on that charge, City of Bell officials gave false testimony to justify

24  the restraining order and ensure that plaintiff was banned from city council meetings.  A commissioner

25  rather than a judge presided over the preliminary hearing.  The commissioner lacked jurisdiction to issue

26  a "holding order," which therefore was void.  Plaintiff received  ineffective assistance of counsel during the

27  preliminary hearing. [Complaint 7].

28  After plaintiff was arraigned in superior court, he moved to proceed in propria persona, for discovery

regarding the prior strike allegations, to reduce his bail, and to dismiss the charges against him.  Operating under an "unlawful policy," defendants "ignore[d] the court rule requiring them to respond to motions filed . . ." [Complaint 7].  "[R]elying on their normal procedure," defendants told plaintiff he was facing a 35-year prison term and "called [plaintiff's] 'bluff' because of serious health issues, forc[ing] him into taking" a 3-year plea bargain. [Complaint 7].  Defendants have a "ministerial duty to correct the error made in the preliminary hearing . . . ." [Complaint 9].

Once plaintiff was incarcerated, defendants "ignored the doctor's orders" for a lower tier and bottom bunk.  Defendants housed plaintiff with gang members who beat him so badly that plaintiff now walks with a cane. [Complaint 8]. Plaintiff served nineteen months in prison. [Complaint 10].

Plaintiff filed a petition for a writ of habeas corpus to vacate the judgment against him.  The state procedures are inadequate to protect federal rights, and the plaintiff presently is exhausting his state remedies to satisfy federal habeas jurisdictional requirements. [Complaint 8]. At the time plaintiff filed his section 1983 complaint, his habeas petition was pending before the California Supreme Court. [Complaint 10].  The lower state courts denied his petition and "failed to issue show cause order[s] to allow any factual development." [Complaint 10 & Exhibits A through C].

Defendants have imposed "'high control' parole reporting" requirements on plaintiff.  Plaintiff must report approximately nine times a month and attend meetings.  Defendants McKeller and Andicochen also make plaintiff's daughter "jump through hoops" in order to make her withdraw her support from plaintiff and to force plaintiff to move out of her house, in order to cause plaintiff to violate his parole and justify sending him back to prison. [Complaint 8-9].

Plaintiff alleges that his allegations meet the test for injunctive relief regarding defendants' failure to respond to his motion under California Penal Code section 995 and his allegation that defendants had a "statutory and constitutional duty to dismiss the charges rather than seek a plea[.]" [Complaint 9].

Plaintiff claims that defendants' conduct violated his Fourteenth Amendment due process rights and his rights to free speech and freedom of assembly. [Complaint 5-6].  He seeks the following relief, as well as any additional relief the Court deems proper:  (1) an order enjoining enforcement of plaintiff's parole conditions until a federal court considers the merits of his habeas petition; (2) an order that defendants show cause why the criminal judgment against him should not be vacated; (3) an order enjoining enforcement of

1   the restraining order issued by the "Norwalk Superior Court"; (4) an order directing state parole supervisor

2   Andicochen and state parole officer McKeller to stop harassing and punishing plaintiff's daughter; and (5)

3   an order requiring defendants to seek leave of this Court before taking action against plaintiff or his family.

4                                                    **Discussion**

5          A complaint may be dismissed on the court's own motion for failure to state a claim upon which

6   relief can be granted.  See Fed. R. Civ. P. 12(b)(6); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

7   2001).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state

8   a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual

9   content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10  alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

11  544, 570 (2007), and citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right

12  to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even

13  if doubtful in fact)." Twombly, 550 U.S. at 555  (internal quotation marks and ellipsis omitted).  The court

14  must accept as true all factual allegations contained in the complaint. That principle, however, "is

15  inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by

16  mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A pro se complaint, however, is "to be

17  liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal

18  pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam) (citing Estelle

19  v. Gamble, 429 U.S. 97, 106 (1976)); see Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)(stating that "we

20  continue to construe pro se filings liberally when evaluating them under Iqbal," and "particularly in civil

21  rights cases, . . . to afford the [plaintiff] the benefit of any doubt") (quoting Bretz v. Kelman, 773 F.2d 1026,

22  1027 n.1 (9th Cir. 1985) (en banc)).

23         **Section 1983 standard**

24         A section 1983 plaintiff bears the burden of pleading and proving two essential elements: (1) conduct

25  that deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or laws of the

26  United States; and (2) the alleged deprivation was committed by a person acting under the color of state law.

27  See West v. Atkins, 487 U.S. 42, 48 (1988); Johnson v. Knowles, 113 F.3d 1114, 1119 (9th Cir.), cert.

28  denied, 522 U.S. 996 (1997); Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

1                       **Official capacity claims**

2           Defendants Brown, Harris, Andicochen, McKeller, and the Director of the CDCR are all state

3 officials sued in their official capacities for injunctive relief. As a California district attorney, Cooley also

4 functions as a state officer when acting in his prosecutorial capacity. Del Campo v. Kennedy,  517 F.3d

5 1070, 1073 (9th Cir. 2008).

6           State officers acting in their official capacities receive Eleventh Amendment immunity from claims

7 for monetary relief. Hafer v. Melo, 502 U.S. 21, 25, 27 (1991) ; Will v. Michigan Dep't of State Police, 491

8 U.S. 58, 65, 71 (1989); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.), cert. denied, 528 U.S. 816 (1999).

9 The Eleventh Amendment does not, however, bar suits for prospective injunctive relief against state officials

10 in their official capacity. See,Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 267-269 (1997); Pennhurst State

11 School & Hospital v. Halderman, 465 U.S. 89, 102-106 (1984); Ex parte Young, 209 U.S. 123, 159-160

12 (1908); Doe v. Lawrence Livermore Nat. Lab., 131 F.3d 836, 839 (9th Cir. 1997). "[I]n determining

13 whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only

14 conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

15 and seeks relief properly characterized as prospective.'" Virginia Office for Protection & Advocacy, —

16 U.S. —,  131 S.Ct. 1632, 1639 (2011) (quoting Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S.

17 635, 645 (2002)). "An allegation of an ongoing violation of federal law is ordinarily sufficient." Verizon

18 Md. Inc., 535 U.S. at 646 (quoting Coeur d'Alene, 521 U.S. at 281) (emphasis in original; ellipsis omitted).

19           Plaintiff's requests for an order requiring defendants to show cause why the criminal judgment

20 against him should not be vacated is not properly characterized as a request for prospective injunctive relief.

21 Instead, that request amounts to a request for relief for past unlawful conduct. See United Mexican States

22 v. Woods, 126 F.3d 1220, 1223 (9th Cir. 1997) (rejecting the argument that challenges to the validity of a

23 criminal conviction and sentence "can give rise to prospective relief under Ex parte Young," and explaining

24 that while a conviction and sentence can be "examined *post hoc* in state post-conviction proceedings and

25 federal habeas," they cannot "be examined in a prospective fashion"; whether a conviction and sentence met

26 constitutional requirements "must be viewed through a retrospective lens").

27           Plaintiff also asks for an order enjoining future enforcement of the restraining order issued against

28 him by a California state court. The Ex parte Young exception authorizes prospective injunctive relief

1  against state officials, but not against a state court. See Ex parte Young, 209 U.S. at 163 ("The right to

2  enjoin an individual, even though a state official, from commencing suits under circumstances already stated

3  does not include the power to restrain a court from acting in any case brought before it  . . . ."); Agua

4  Caliente Band of Cahuilla Indians v. Hardin,  223 F.3d 1041, 1048 (9th Cir. 2000) (stating that the Ex parte

5  Young exception "has always distinguished between a suit against a State qua State and a suit against a state

6  official to enjoin the enforcement of a state act that violates federal law: the [Ex parte Young] doctrine has

7  always permitted the latter to avoid the sovereign immunity bar");  Greater Los Angeles Council on

8  Deafness v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) (holding that a suit against the superior court is a

9  suit against the State of California and therefore is barred by the Eleventh Amendment).

10         Accordingly, plaintiff's section 1983 claims for injunctive relief arising from his allegedly unlawful

11  plea bargain and conviction, and from the state court's issuance of a restraining against him, are barred by

12  the Eleventh Amendment and are dismissed.

13         Additionally, plaintiff's section 1983 claims against Brown, Harris, Cooley and the Director of the

14  CDCR fail because the Ex parte Young exception contains a "causation requirement,"  Artichoke Joe's v.

15  Norton, 216 F. Supp. 2d 1084, 1110 (E.D. Cal. 2002) , aff'd, 353 F.3d 712 (9th Cir. 2003), and plaintiff's

16  allegations fail to satisfy that requirement.

17         [N]ot every state officer is subject to suit simply by virtue of being a state officer. Rather,

18         the "officer must have some connection with the enforcement of the act, or else it is merely

19         making him a party as a representative of the State, and thereby attempting to make the State

20         a party." Further, the "connection must be fairly direct; a generalized duty to enforce state

21         law or general supervisory power over the persons responsible for enforcing the challenged

22         provision will not subject an official to suit."

23  Artichoke Joe's, 216 F. Supp. 2d at 1110 (quoting Ex parte Young, 209 U.S. at 157; Los Angeles County

24  Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992)); see Long v. Van de Kamp, 961 F.2d 151, 152 (9th

25  Cir.1992) (per curiam); Los Angeles Branch NAACP, 714 F.2d 946, 953 (9th Cir. 1983).

26         Plaintiff alleges that Brown violated his constitutional duty as governor to "take care that the laws

27  be faithfully executed," and to oversee the operations of the attorney general's office and the district

28  attorneys. Plaintiff alleges that Harris violated her duty as the "chief law officer of the state" to see that all

laws of the state are adequately enforced, and that she failed to train and supervise the district attorneys and failed to implement sufficient policies to prevent violations by district attorneys. Plaintiff alleges that Cooley engaged in an "unlawful exercise of discretion," had an unspecified conflict of interest, and operated under an unlawful policy and procedure. [Complaint 3, 5]. Plaintiff alleges that the Director of the CDCR failed to train and supervise his staff and to implement sufficient policies to stop violations of plaintiff's rights. [Complaint 4].

The general duty of Brown, Harris, Cooley, and the Director of the CDCR to enforce California law or supervise their subordinates execution or enforcement of the law "does not establish the requisite connection between [them] and the unconstitutional acts alleged by" plaintiff, and therefore those claims are dismissed. Los Angeles Branch NAACP, 714 F.2d at 953 (holding that the Eleventh Amendment barred the plaintiff's section 1983 suit against the governor of California seeking to enjoin him to perform affirmative acts); see Long, 961 F.2d at 152 (holding that "the general supervisory powers of the California Attorney General" were not sufficient "to establish the connection with enforcement required by Ex parte Young"); S. Pac. Trans. Co. v. Brown, 651 F.2d 613, 614 (9th Cir. 1981) (holding that the Oregon attorney general's "power to direct and advise" district attorneys "does not make the alleged injury fairly traceable to his action, nor does it establish sufficient connection with enforcement to satisfy Ex parte Young"); cf. Artichoke Joe's, 216 F.Supp.2d at 1110 (holding that the governor was subject to suit under Ex parte Young where the plaintiffs' claims were "not based on any general duty to enforce state law," but rather alleged "a specific connection to the challenged statute," in that the governor "negotiated and approved the compacts that give rise to the plaintiffs' alleged injuries," and the plaintiffs alleged ongoing violations of federal law due to his approval of the compacts).

**Challenge to legality of conviction**

Alternatively, plaintiff's section 1983 claim challenging the legality of his plea bargain and criminal conviction fail because such claims must be brought in a petition for a writ of habeas corpus.

In general, a person seeking to challenge the lawfulness of his criminal conviction or sentence must seek relief by filing a petition for a writ of habeas corpus. See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973). In his complaint, plaintiff alleges that he is currently exhausting state remedies, and that his state habeas petition is pending before the California Supreme Court.

7

[Complaint 8].  If plaintiff seeks relief from the fact or duration of his conviction and confinement, he must do so in a petition for a writ of habeas corpus after exhausting his state remedies. See Preiser, 411 U.S. at 498;  Young v. Kenny,  907 F.2d 874, 875 (9th Cir. 1990).  Where a claim is brought under section 1983 but should properly be brought in a habeas petition, the proper remedy is to dismiss the claim without prejudice, rather than to convert it to a habeas action. See Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir.1995); Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir.1977); see also Bunn v. Conley, 309 F.3d 1002, 1008-1009 (7th Cir. 2002).

Accordingly, plaintiff's section 1983 claims challenging the legality of his plea bargain and conviction are dismissed.

**Challenge to parole conditions**

Plaintiff also seeks an order enjoining enforcement of his parole conditions.  Neither the United States Supreme Court nor the Ninth Circuit has decided whether a section 1983 action may be brought to challenge parole conditions "preemptively" (that is, in the absence of parole revocation for violating those conditions), or whether such challenges instead must be brought in a habeas petition.  The Seventh Circuit has held that a challenge to conditions of parole or probation must be brought by means of a habeas petition. See Williams v. Wisconsin, 336 F.3d 576, 570-580 (7th Cir. 2003) (parole);  Drollinger v. Milligan, 552 F.2d 1220, 1224 (7th Cir.1977) (probation). Several district courts within the Ninth Circuit have reached the same conclusion.  These courts have reasoned that a habeas petition is the proper vehicle to challenge parole conditions because those conditions are the exclusive means by which a parolee remains "in custody," and because those conditions properly are considered part of the parolee's sentence.  Thornton v. Schwarzenegger, 2011 WL 2173652, at *12-*14 (S.D. Cal. June 1, 2011); Moore v. Schwarzenegger, 2010 WL 2740323. *2-*3 (C.D. Cal. May 28, 2010), report and recommendation adopted, 2010 WL 2740320 (C.D. Cal. July 5, 2010); Cordell v. Tilton, 515 F.Supp.2d 1114, 1121-1122 (S.D. Cal. 2007); Moreno v. California, 25 F.Supp.2d 1060, 1061 (N.D. Cal.1998); see also United States v. Brown, 59 F.3d 102, 104-105 (9th Cir. 1995) (explaining that parole and probation are part of the original sentence, that their continuance is conditioned on compliance with stated conditions, and that if the defendant does not comply with those conditions, parole and probation may be revoked); Bagley v. Harvey, 718 F.2d 921, 923 (9th Cir. 1983) (affirming denial of habeas petition challenging special parole condition).

Other district courts within the Ninth Circuit, however, have concluded that parole conditions are not properly considered part of a criminal sentence, and that a suit regarding such conditions does not necessarily call into question the "fact or duration of confinement," but rather is analogous to a suit challenging prison conditions under section 1983. See Loritz v. Dumanis, 2007 WL 1892109, at *3 (D. Nev. Jun. 27, 2007); Ford v. Washington, 2007 WL 1667141, *4 (D. Or. June 1, 2007), aff'd, 411 Fed.Appx 968 (9th Cir. 2011); see also Bowman v. Schwarzenegger, 2009 WL 799274, at *10-*11 (E.D. Cal. Mar. 23, 2009) (assuming, without deciding, that the plaintiff could seek injunctive relief with respect to parole conditions in section 1983 action).

Assuming, without deciding, that plaintiff's challenge to his parole conditions is cognizable in this section 1983 action, plaintiff has not alleged any facts plausibly suggesting that his parole conditions violate his federal rights. Plaintiff alleges that he is subject to "high control" reporting requirements pursuant to which he must report nine times a month and attend meetings. "To accomplish the purpose of parole," parolees "are subjected to specified conditions" that "restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen," typically including restrictions on a parolee's association with certain persons and on his or her ability to engage in specified activities. Morrissey v. Brewer, 408 U.S. 471, 478 (1972). "Additionally, parolees must regularly report to the parole officer to whom they are assigned." Morrissey, 408 U.S. at 478. [T]hrough the requirement of reporting to the parole officer and seeking guidance and permission before doing many things, the officer is provided with information about the parole[e] and an opportunity to advise him. The combination puts the parole officer into the position in which he can try to guide the parolee into constructive development." Morrissey, 408 U.S. at 478 (footnote omitted). Plaintiff's allegations that he must report to his parole officer nine times a month and attend meetings are insufficient to state a section 1983 claim. Therefore, plaintiff's section 1983 claims seeking to enjoin enforcement of his parole conditions are dismissed.

Plaintiff further alleges that defendants McKeller and Andicochen made his daughter "jump through hoops" in an effort to make plaintiff move out of her home and violate his parole, and that Andicochen failed to stop McKeller from engaging in "abusive practices" that "victimized" plaintiff and his family. To the extent that plaintiff is attempting to assert or vindicate his daughter's rights in this action, his complaint fails to state a cognizable claim. See Johns v. County of San Diego, 114 F.3d 874, 876-877 (9th Cir. 1997)

(explaining that constitutional claims are personal and cannot be asserted vicariously, and that a non-attorney may appear pro se on his own behalf but has no authority to appear as an attorney for others). Furthermore, plaintiff's vague and conclusory allegations that McKeller and Andicochen "victimized" plaintiff or his daughter are devoid of supporting factual allegations and are not accepted as true.  See Iqbal,556 U.S. at 679 (stating that the court can identify allegations in a complaint that are "no more than conclusions" and therefore "are not entitled to the assumption of truth").

### Prison conditions claims moot

In addition to the other grounds for dismissing plaintiff's section 1983 claims, his claims seeking injunctive relief with respect to the conditions of confinement during his incarceration are moot because plaintiff has been released from prison.  See Mitchell v. Dupnik, 75 F.3d 517, 527-528 (9th Cir. 1996); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995).

### Conclusion

For the reasons described above, the complaint fails to state a cognizable federal claim. Accordingly, the complaint is dismissed in its entirety pursuant to Rule 12(b)(6).  Although some of plaintiff's claims fail as a matter of a law, it is not absolutely clear that plaintiff cannot salvage any of his claims by pleading additional facts.  Accordingly, plaintiff is granted leave to amend in accordance with the instructions set forth at the beginning of this order.  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (stating that leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect").

**IT IS SO ORDERED.**

September 6, 2012

_____
ANDREW J. WISTRICH
United States Magistrate Judge